Filed 7/5/23  P. v. Irvin CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LARRY WILLIAM IRVIN,<br><br>    Defendant and Appellant. | F084806<br><br>(Super. Ct. No. LF012027A)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Judith K. Dulcich, Judge.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Dina Petrushenko, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Poochigian, Acting P. J., Smith, J. and Snauffer, J.

## INTRODUCTION

This is the second appeal by defendant Larry William Irvin after he was convicted by a jury of multiple counts of domestic violence, assault, violation of a restraining order, and assault with a deadly weapon. The trial court sentenced defendant to a total of 11 years in state prison: the upper term of five years for corporal injury resulting in a traumatic condition (count 2), one year (one-third the midterm) for assault with a deadly weapon (count 5), and five years for the great bodily injury enhancement. In the previous appeal, we remanded to the trial court for resentencing in light of newly enacted Assembly Bill No. 518 (2021–2022 Reg. Sess.) and Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567). Following a remand for resentencing, defendant was again sentenced by the trial court to a total of 11 years in state prison—the upper term of five years on count 2 plus five years (upper term) for the great bodily injury enhancement, and one year (one-third the midterm) on count 5.

In the present appeal, defendant contends the matter should be remanded due to the trial court's reliance on improper information in imposing the upper term sentence for count 2. Defendant also asserts the trial court was not authorized to impose the upper term on the great bodily injury enhancement absent a stipulation or finding by a jury pursuant to amended Penal Code section 1170.1.[1] We agree with defendant that he is entitled to resentencing based upon the lack of a required finding or stipulation to support imposition of the upper term on the enhancement.

## FACTS

On October 31, 2018, after a jury trial, defendant was convicted of count 2, corporal injury resulting in a traumatic condition upon the confidential victim (C.V.) (§ 273.5, subd. (a)), a felony; count 3, assault on C.V. by means likely to produce great bodily injury (§ 245, subd. (a)(4)), a felony; count 4, violation of a restraining order

---

[1]     Further statutory references are to the Penal Code unless otherwise noted.

(§ 273.6, subd. (a)), a misdemeanor; and count 5, assault with a deadly weapon upon M.N. (§ 245, subd. (a)(1)), a felony. The jury also found the great bodily injury enhancements true as to counts 2, 3, and 4. The trial court found the prior prison allegations to not be true and deferred ruling on the prior domestic violence allegation under section 273.5, subdivision (f)(1) until sentencing.

The trial court sentenced defendant to a total of 11 years in state prison: the upper term of five years for count 2, one year (one-third the midterm) on count 5, and five years for the great bodily injury enhancement. Defendant filed a notice of appeal on the date of his sentencing hearing.

*Prosecution Evidence*

On July 15, 2018, C.V. spent the night with defendant in a makeshift tent in the backyard of defendant's mother's home. Defendant and C.V. had been in a dating relationship for two to three years, but they were not involved in a relationship in July 2018. C.V. went to the home of defendant's mother that evening to gather her dog and other personal items. Defendant and C.V. began arguing the following morning about whether he should tell his ex-wife that he was with C.V. Both defendant and C.V. were smoking methamphetamine that morning.

The argument between defendant and C.V. continued for a couple of hours until it eventually escalated to physical violence. Defendant threatened to kill C.V. if she refused to send a specific message to his ex-wife; however, C.V. chose to tell defendant's ex-wife that she was in fact present with him. Once defendant saw the message sent by C.V., he began squeezing her neck until she was unable to breathe. C.V. started to have a seizure related to a preexisting medical condition and in response to the choking. As she came out of the seizure, C.V. could feel defendant stomping on her shoulder, side, neck, and face.

Kern County Sheriff's Deputies Robert Fisher and Travis Gaetzman responded to a 911 call and contacted C.V. at the scene. C.V. was crying and trembling and had

difficulty answering questions. The deputies observed red marks running from her chin to her collar bone and swelling on her face. C.V. showed the deputies how defendant choked her with his fingers pressed on the center of her throat. A manager at the forensic services unit of the hospital examined photos of C.V.'s neck, throat, and shoulder, and she believed that the injuries were consistent with those inflicted by manual strangulation.

Defendant was stopped when M.N., the boyfriend of defendant's ex-wife's daughter, arrived and hit defendant in the face. Defendant then grabbed a sword and chased M.N. around a tree. M.N. picked up a pipe to defend himself while defendant held up the sword in an upward motion. The girlfriend of M.N. jumped in between M.N. and defendant before calling law enforcement. Defendant fled the scene on his bicycle.

Fisher located defendant less than two miles away in an empty field several hours later and he was taken into custody. While he was in custody, defendant was recorded telling his mother that he did not want some witnesses to get a ride to court to testify against him. Defendant also stated that C.V. better leave town because he would "finish the job" next time.

*May 2016 Incident*

C.V. also testified regarding a prior incident in May 2016 where defendant strangled her. Defendant was holding C.V.'s dog in the air by its neck, and C.V. tried to get him to let go of the dog. C.V. recalled defendant choking her and then punching her in the face for a total of four times until she blacked out. C.V. was unable to defend herself and believed that she was going to die. A police officer responded to the incident and found C.V. with redness on the right side of her neck. C.V. informed the officer that defendant also punched her on the forehead, and she accepted an emergency protective order from the officer against defendant.

*Defense Evidence*

Defendant testified that C.V. had been staying with defendant for the past month and a half prior to the incident in July 2018. According to defendant, C.V. began punching herself in the head and then choked herself until she began having a seizure. While she was hurting herself, C.V. told defendant that she would put defendant back in jail. C.V.'s puppy was being trained to help C.V. when she had seizures, and it began scratching at her neck.

After defendant rolled C.V. onto her side, M.N. arrived and hit defendant on the side of his head. Defendant left the scene because he was outnumbered and believed he "would have got beat up." Defendant denied kicking or choking C.V., and claimed he was unable to squeeze with his right hand.[2]

M.N. told Fisher that C.V. was having a seizure or unconscious when he arrived at the home because her body was convulsing. M.N. also told Fisher that defendant kicked C.V. multiple times and finally stopped choking C.V. after M.N. yelled at him. Defendant told Fisher that C.V. had been hitting and choking herself on the day of the incident.

Defendant admitted to a 2007 felony conviction for spousal abuse, a 2007 misdemeanor conviction for violation a restraining order, a 2008 misdemeanor conviction for providing false information to a police officer, and a 2016 misdemeanor conviction for battery. Defendant acknowledged his jail phone call to his mother, insisted that C.V. inflicted any injuries to herself, and claimed that M.N. was lying.

During the May 2016 incident, defendant told officer Steven Schmick that C.V. had a knife with his fingerprints on it that she was planning to kill herself with. C.V.

---

[2] Defendant stated that C.V. severed the top part of his knuckle and broke his finger during the May 2016 incident. Defendant pled guilty to a charge of spousal abuse as a result of the May 2016 incident.

informed Schmick that she pulled out the knife to defend herself when defendant was strangling her. Schmick observed small red marks on the side of her neck, which were consistent with the statements C.V. had made. Schmick also saw that defendant's middle knuckle was open, bleeding and swollen. Defendant admitted to punching C.V. in the head after he threw the knife.

## DISCUSSION

Defendant contends that the trial court erred in imposing the upper term sentence on count 2 and the great bodily injury enhancement because the sentences were not supported by stipulated facts or based on the jury's findings beyond a reasonable doubt. He thus argues that the matter must be remanded for resentencing.

### A.    *Legal Principles*

As amended by Senate Bill 567, section 1170 now provides, "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (*Id*., subd. (b)(1).) "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial…." (*Id*., subd. (b)(2).)

Also amended by Senate Bill 567, section 1170.1, applicable to enhancements, provides, "When the court imposes a sentence for a felony pursuant to Section 1170 or subdivision (b) of Section 1168, the court shall also impose, in addition and consecutive to the offense of which the person has been convicted, the additional terms provided for any applicable enhancements. If an enhancement is punishable by one of three terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (*Id*., subd. (d)(1).) "The

court may impose a sentence exceeding the middle term only when there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Id*., subd. (d)(2).)

## B. *Standard of Review*

In order to satisfy federal constitutional requirements, an appellate court must conclude beyond a reasonable doubt that the jury, also applying the beyond a reasonable doubt standard, unquestionably would have found true at least a single aggravating circumstance. (*People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1112; see also *People v. Dunn* (2022) 81 Cal.App.5th 394, 401, review granted Oct. 12, 2022, S275655; see *People v. Sandoval* (2007) 41 Cal.4th 825, 839.) Second, the appellate court must determine, under the state law *Watson* standard (*People v. Watson* (1956) 46 Cal.2d 818, 836), whether the court would have imposed the upper term regardless of the error.

This involves a two-step examination. "In particular, we must consider whether it is reasonably probable that the trial court would have chosen a lesser sentence in the absence of the error. [Citation.] Resolving this issue entails two layers of review. We must first, for each aggravating fact, consider whether it is reasonably probable that the jury would have found the fact not true. We must then, with the aggravating facts that survive this review, consider whether it is reasonably probable that the trial court would have chosen a lesser sentence had it considered only these aggravating facts." (*People v. Zabelle*, *supra*, 80 Cal.App.5th at p. 1112; see also *People v. Dunn*, *supra*, 81 Cal.App.5th at p. 401, review granted Oct. 12, 2022, S275655.)

## C. *Procedural Background*

On August 16, 2022, defendant was resentenced with count 2 (corporal injury resulting in a traumatic condition) as the principal term for an 11-year term in state prison as the trial court did previously in 2018. During the resentencing hearing, the prosecution

requested that defendant's sentence remain the same, and defendant's counsel argued that defendant should "only receive the midterm or less. He should not receive the upper term."

The trial court imposed the upper term for count 2 after finding that the factors in aggravation outweighed the mitigation factors. The court relied upon four aggravating factors detailed in the probation officer's report: (1) defendant's numerous past convictions as an adult; (2) defendant's six prior prison terms; (3) defendant's misdemeanor probation status at the time the current offenses were committed; and (4) defendant's prior performance on probation or parole was unsatisfactory. In selecting the upper term for count 2, the court stated as follows:

> "So then the question is with respect to the mitigating and aggravating factors, based on the change in law, I think I can recognize that in mitigation, there are multiple enhancements being imposed; however, I also think the Court did hear the evidence that the jury heard and heard the evidence, made the finding with respect to the 273.5(f)(1) with respect to the prior conviction. [¶] I think that the Court can rely on the probation report, which is a record—it is part of the court's record. I think I can take judicial notice of that. And he has more of a prior history than just the 273.5 conviction, and it is that prior history that is concerning. [¶] On the probation's supplemental letter, I did want to point out that [the probation officer] pointed out an additional factor in aggravation that felt he had engaged in violent conduct which indicates a serious danger to society as evidenced by his current convictions and prior convictions. [¶] I think that particular one is one that a jury would need to make a finding on, but I think the first four that are listed by probation are appropriate findings by the Court without a jury finding, and I do find that each one of those are true based on official court documents in this court file reflecting his prior history, not only of convictions, but of probation and parole violations. [¶] There is just no denying that, as [the prosecutor] said, at a minimum, we know that the domestic violence prior was alleged as an enhancement. We also know that his prior convictions as set forth are numerous, that he served six prior prison terms. He was on five grants of misdemeanor probation when the crimes—when this crime was committed, and based on the probation history, his performance on those probation grants and parole grants is unsatisfactory. So I do find that the factors in aggravation outweigh the factors in mitigation."

8.

The trial court then provided its justification for consecutive sentencing based upon the separate victims. The consecutive one-year term (one-third the midterm) was imposed for count 5 (assault with a deadly weapon). The sentences for counts 3 and 4 were stayed pursuant to section 654. The court also imposed the upper term of five years for the great bodily injury enhancement as to count 2 without a discussion or explanation for that decision.

**D.** *Analysis*

The record indicates the trial court sentenced defendant to the upper term on count 2 based upon defendant's past convictions, six prior prison terms, probation status at the time the offense was committed, and defendant's prior unsatisfactory performance on probation or parole. The record is silent as to the court's justification for selecting the upper term as to the great bodily injury enhancement as to count 2. However, none of the aggravating circumstances cited by the court were found true beyond a reasonable doubt at trial by the jury or judge in a court trial or admitted by defendant. Thus, the sentence imposed on defendant is contrary to the provisions of the amended statute.

The People argue that defendant's failure to object to the trial court's imposition of the upper term on the enhancement forfeited his ability to challenge the unauthorized sentence. They contend an objection by defendant would have revealed the aggravating circumstances for the court's discretionary sentencing choice. We disagree. Defendant's counsel specifically requested that defendant be sentenced to the middle or lower term at the resentencing hearing. Therefore, defendant's counsel preserved his ability to challenge the trial court's imposition of the upper term as to both count 2 and its great bodily injury enhancement.

Furthermore, the trial court did not specify which aggravating circumstances it was relying on in imposing the upper term for the great bodily injury enhancement. The People concede that the court improperly relied on two aggravating circumstances without a required finding or stipulation when it imposed the upper term on count 2.

9.

However, they argue that we should presume the court was aware of and followed the applicable law with respect to the great bodily injury enhancement. We decline to make such a presumption given that the trial court did not make the requisite findings beyond a reasonable doubt for the appropriate aggravating circumstances on count 2.

While exercising its discretion in imposing the upper term on the enhancement, it is not clear whether the trial court relied solely on the two circumstances regarding the defendant's probation status and performance and/or the two circumstances involving defendant's prior convictions. "It would be entirely speculative for us to presume, based on a record that does not directly address the aggravating factors, what a jury would have found true in connection with these factors." (*People v. Lopez* (2022) 78 Cal. App. 5th 459, 466.) Thus, we are unable to determine whether a jury would have found the aggravating facts relied upon by the trial court true beyond a reasonable doubt.

On remand, defendant is entitled to a full resentencing. (See *People v. Buycks* (2018) 5 Cal.5th 857, 881.) However, we take no position on how the trial court should exercise its discretion when it resentences defendant. In sum, a remand for resentencing is appropriate so that the trial court can sentence defendant in accordance with Senate Bill 567. Because this matter must be remanded under the full resentencing rule, defendant's challenge to the court's reliance on certain information in imposing the upper term on count 2 may be properly addressed at the resentencing hearing.

## DISPOSITION

Appellant's sentence is ordered vacated and the matter is remanded to the trial court for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.